United States District Court
Eastern District of Michigan
Southern Division

United States of America,

No. 2:25-cr-20612-3
Hon. Mark A. Goldsmith

v.

**Filed Under Seal – Ex Parte**

Abbas Al Othman,

Defendant.

_____/

**Government's Motion to Revoke Pretrial Release**

Abbas Al Othman, a person under federal indictment in a conspiracy to steal cars and smuggle them overseas, continues to ship stolen vehicles after promising to not violate any laws while on pretrial release.

Al Othman has demonstrated that he will continue to violate court supervision and violate the law. Accordingly, the government moves this Court to issue a warrant for his arrest and, ultimately, revoke Al Othman's pretrial release and order his detention. *See* 18 U.S.C. § 3148(b).

**I. Statement of facts**

A. *Overview of the investigation*

For over two years, federal law enforcement has investigated a scheme to smuggle stolen automobiles and parts therefrom in shipping containers destined to the Middle East. The indictment outlines two groups of conspirators. The first group comprises broker-middlemen who work with car thieves to supply smugglers with stolen cars. The second group comprises smugglers, who negotiate (illegal) sales with the broker-middlemen for the stolen cars, take possession of the cars, pay the brokers/thieves, pack the vehicles and/or parts into shipping containers, and cause the shipment of these items to the Middle East. The smugglers have conducted their smuggling operations at four commercial/industrial lots in Detroit, on Tireman Avenue, Greenfield Road, Fullerton Avenue, and Nelson Street. Al Othman is one of the smugglers.

As of this writing, federal and local law enforcement and their partners have searched over 240 containers in the United States, and, occasionally, foreign countries. Agents and officers have interdicted and recovered over 430 intact stolen vehicles and countless numbers of stolen/chopped parts. The estimated value of the intact vehicles alone,

and just the value of vehicles law enforcement *interdicted*, is $40 million.

### B. Examples of Al Othman's pre-indictment involvement in the conspiracy

Before his release on bond, Al Othman shipped at least nine containers in his company's name that contained stolen cars or parts as part of this conspiracy. The grand jury indicted him for conspiracy to transport a stolen vehicle or vehicles and three substantive counts of transportation of a stolen vehicle (counts 6 through 8). ECF No. 1, PageID.15–16 (citing 18 U.S.C. §§ 371, 2312).

In October 2023, Al Othman caused the shipment of shipping container UACU586110 via a shipping company of which he was the registered agent. Al Othman used a freight-forwarding agent, akin to a travel agent for shipping containers, to effectuate the shipment. The freight forwarding agent, as required by law, provided its file for this shipment to government investigators.

The freight forwarder's file included WhatsApp messaging between the forwarding agent and Al Othman. The messaging showed



Al Othman requesting the freight forwarder provide a container for shipment to Dubai. After Al Othman loaded the container, the forwarding agent asked Al Othman to clarify that UACU586110's contents were auto parts. Al Othman replied, "Yes."

U.S. Customs and Border Protection scanned the "auto parts" container after its arrival at the port of Norfolk, Va. The scan image revealed the following:



When agents later opened the container, they discovered inside three stolen high-end Ford vehicles: a Bronco and two Mustangs.

  

Those three vehicles were the vehicles subject of counts 6 through 8 in the indictment. Shipping container UACU586110 originated at the Greenfield Lot, the location at which law-enforcement surveillance observed co-conspirator David Roshinsky Williams escorting the Bronco's driver (the last four digits of the VIN, 9762, appear in chalk on the rear windshield) in the fall of 2023:



In the spring of 2025, federal law enforcement obtained a Title III authorization to intercept communications of co-conspirator Haydar Al Haydari. On March 3, 2025, Al Haydari and Al Othman discussed the latter's concern that he could no longer receive shipping containers under his business name anymore, and his freight forwarder was getting mad at him for changing the shipping entity name four times.

On March 30, 2025, law enforcement surveilled Al OTHMAN's car following a stolen Dodge Durango into the Tireman Lot and then following shipping container MSDU8455496 from the Tireman Lot to the Greenfield Lot.[1]

On April 14, 2025, law enforcement seized shipping container MSDU8455496 in Detroit, where it was destined overseas. It contained two stolen Durangos and one stolen Chevrolet Blazer. The shipper was *not* (on paper) an Al Othman entity.

On May 17, 2025, Al Othman told Al Haydari that he and his associates needed to be more careful when loading cars, and that they needed to remove the cars' license plates and disconnect the batteries to ensure the alarms did not sound. In the same conversation, Al Othman mentioned that 14 of his containers had been seized, which was hurting his business.

---

[1] Notably, the Greenfield Lot was the same site to which Roshinsky Williams had escorted a stolen Bronco (pictured above) in the fall of 2023. And the Tireman Lot was the site of extensive smuggling operations in the summer of 2024, which law enforcement searched in July of that year. Agents' search of the Tireman Lot ultimately led to the summer 2024 interdiction of 14 shipping containers associated with co-conspirator Mohammed Al Abboodi, who was communicating extensively about stolen cars with Al Haydari.

In another call the same day, Al Haydari and Al Othman discussed shipping cars. Al Othman told Al Haydari they should ship to Dubai, not Iraq. Earlier in the day, they discussed looking for a new "shop" in the same conversation as they discussed Durangos.

### C. Al Othman's continued smuggling

Following the indictment and the arrest of the charged eight defendants, a magistrate judge of this Court ordered the detention of Al Haydari and co-conspirator Karar Alnakash as flight risks. ECF Nos. 79, 82. The magistrate released Al Othman on September 9, subject to various conditions, including that he not violate any laws while on release. ECF No. 80, PageID.144.

On November 12, 2025, Pennsylvania law enforcement stopped a semi-truck from a Michigan-based company because a stolen 2024 Jeep Wagoneer was pinging (transmitting its GPS coordinates) from inside the shipping container the semi-truck was hauling, FDCU0142073. State troopers searched the container and located the Waggoneer and a 2025 Chevrolet Corvette. Both vehicles were stolen in Metropolitan Detroit.

Agents from Homeland Security Investigations obtained the cellular phone of the trucking company's owner after encountering him at the Detroit Metropolitan Airport. The trucking company's phone revealed conversations between Al Othman and himself regarding the transportation of numerous shipping containers, including FDCU0142073 (mentioned above) and HAMU1847972, which contained a 2023 Chevrolet Suburban stolen from Metropolitan Detroit and a 2025 Chevrolet Tahoe stolen in Cleveland. CBP recovered the second container in Norfolk, Va.

The trucking company owner provided a list of 18 containers that Al Othman had shipped via his firm. Two have already completed transit to Saudi Arabia, and the phone showed text messaging between Al Othman and the owner. A few others await redelivery to U.S. ports (at CBP's request) and/or are in the ports awaiting CBP inspection. Several others may have been cancelled. Of the remaining five that have been interdicted, each contained two stolen high-end vehicles. All the containers CBP interdicted were the subject of manifests that falsely listed their contents, such as auto parts, gym equipment, or John Deere attachments.

Law enforcement corroborated the shipper's phone number as belonging to Al Othman. HSI compared the phone's recurring contacts (and the frequency of those contacts) as those it previously attributed to Al Othman when he used a different phone number. The patterns were similar. Additionally, an Arabic-speaking HSI special agent listened to several of the voice notes from that phone number to the trucking-company owner and observed that the voice in the voice notes was the Al Othman's (which he recognized from intercepted wiretap recordings of Al Haydari's phone from early 2025).[2]

On November 3, 2025, Al Othman sent a voice note to the trucking owner. In that audio recording, Al Othman emphasized that he rushes to finish his jobs so that he does not delay the trucking company's drivers. Al Othman said his business was a risky and that he cannot wait more than 24 to 48 hours for bookings.

## I.    Argument

---

[2]     Al Othman interacted with CBP at Detroit Metro on November 24, 2023, presented his passport, and provided the telephone number that law enforcement associated with him during the wiretap interceptions.

Legal obligations such as conditions of release have meaning only if a court enforces them. Enforcement is of exceptional importance when the subject of the conditions violates them.

Upon finding probable cause that a person violated a release order by committing a new crime, a court "*shall* enter an order of revocation and detention" if it finds either that that no combination of conditions will assure that the person will not pose a danger to the community, or the person is unlikely to abide by any condition or combination of release. 18 U.S.C. § 3148(b) (emphasis added).

The Court's probable-cause finding of a new crime also triggers a rebuttable presumption that no combination of conditions will assure that the defendant poses no danger to the community. *Id.* "Once the presumption is implicated, 'it is incumbent on the defendant to come forward with some evidence to rebut the presumption.'" *United States v. Hill*, No. 96-5914, 1996 U.S. App. LEXIS 22650, at *4 (6th Cir. Aug. 15, 1996) (quoting *United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989)). *See also United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (cleaned up, emphasis added)) ("A defendant must introduce *some*

evidence contrary to the presumed fact in order to rebut the presumption.").

Suggested conditions of bond are not *evidence* that rebuts the presumption. "[A]llowing a Defendant to rebut the presumption with suggested conditions of release renders the presumption meaningless. The law requires the Court to presume that *no conditions* will reasonably assure appearance and the safety of the community." *United States v. Chadwick*, No. 2:23-cr-20653, 2023 U.S. Dist. LEXIS 215233, at *7 (E.D. Mich. Dec. 4, 2023) (Murphy, J.).

Al Othman cannot rebut the presumption that no combination of conditions will assure that he poses no danger to the community. *See United States v. Jackson*, No. 2:21-cr-20610, ECF No. 121, PageID.525 (E.D. Mich. Dec. 16, 2021) (Goldsmith, J.) ("[T]he danger that Jackson may commit further financial crimes—even though non-violent in nature—also militates against his release.").

Even without the presumption, Al Othman has shown that supervision conditions are ineffective to deter him from reoffending. He has committed new offenses, including transportation of a stolen vehicle, a 10-year felony, 18 U.S.C. § 2312; and receipt, possession, and

concealment of stolen property worth more than $20,000, Mich. Comp. Laws § 750.535(2).

Additionally, again independent of the presumption, the government has shown herein that Al Othman is unlikely to abide by conditions of release. He executed a bond wherein he promised to comply with all conditions of release, including refraining from committing new offenses. His actions while on release demonstrate that his word is *not* his bond.

## II.    Conclusion

WHEREFORE, the government respectfully requests this Court issue a warrant for Al Othman's arrest, revoke his pretrial release, and enter an order of detention.

Respectfully Submitted,

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Michigan 48226-3211
313-226-9745
louis.meizlish@usdoj.gov

Dated:      February 12, 2026